UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

**DAMITA NATASHA KELLY and
ROBERTINO LEE SCENIE,**

        **Plaintiffs,**

**v.**                                                    CIVIL ACTION NO:

**TYSINGER MOTOR COMPANY, INC.,**

**SERVE: Gregory S. Larsen, R/A
       3330 Pacific Avenue, Suite 303A
       Virginia Beach, Virginia 23451**

        **Defendant.**

## COMPLAINT

COME NOW the Plaintiffs, **DAMITA NATASHA KELLY** and **ROBERTINO LEE SCENIE** (hereafter "Ms. Kelly", "Mr. Scenie" or "Plaintiffs"), by Counsel, and for their Complaint against the Defendant Tysinger Motor Company, Inc., they allege as follows:

### PRELIMINARY STATEMENT

1.     This case arises from Defendant's fraudulent conduct in the sale of an automobile and breach of its written warranty that the vehicle was "new."

2.     On around October 2, 2020, Plaintiffs purchased a 2020 Hyundai Sonata from Tysinger Motor Company (hereafter the "Defendant"). Plaintiffs believed they were purchasing a new vehicle.

3.     Unbeknownst to Plaintiffs, the "new" vehicle they purchased had previously been stolen from Tysinger's dealer lot, driven by the thieves, and eventually recovered by police.

4.      Despite knowing of this history, Defendant engaged in discussions and a sale transaction with Plaintiffs, representing the entire time that the vehicle was "new," and failing to otherwise disclose the theft history to Plaintiffs.

5.      Had Plaintiffs known the truth, they would not have purchased the Sonata or would have paid much less for it.

6.      Plaintiffs therefore bring claims against Tysinger for violations of the Virginia Consumer Protection Act, the Magnussen Moss Warranty Act, and common-law fraud.

**JURISDICTION & VENUE**

7.      This Court has jurisdiction pursuant to 15 U.S.C. § 2310(d). The Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367(a).

8.      Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in this District and Division.

9.      It is inappropriate for this dispute to be resolved in arbitration because Plaintiffs filed an arbitration proceeding against Tysinger, and Tysinger failed to meet its obligation to pay the administrative fees necessary for the arbitration to go forward.

10.     The arbitration was therefore dismissed, for Tysinger's default, so it has waived any ability to compel this suit into arbitration.

**PARTIES**

11.     Plaintiff **DAMITA NATASHA KELLY** is a natural person and a resident of the Commonwealth of Virginia in Williamsburg, Virginia.

12.     Plaintiff **ROBERTINO LEE SCENIE**, is a natural person and a resident of the Commonwealth of Virginia in Williamsburg, Virginia.

13.     Plaintiffs are both "consumers" as that term is defined in the Virginia Consumer Protection Act, and the Sonata at issue was purchased for personal, family, or household use.

14.     Plaintiffs are also "consumers" as that term is defined in the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301(3), and the Sonata at issue is a "consumer product" as defined by the Act, 15 U.S.C. § 2301(1).

15.     Defendant Tysinger Motor Company, Inc. is incorporated to do business in the state of Virginia and its business is operated at 2712 Magruder Boulevard, Hampton, Virginia 23666.

16.     Tysinger is a "supplier" and "warrantor" under the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301(4), (5).

**FACTS**

17.     In around the second day of October 2020, Plaintiffs purchased a 2020 Hyundai Sonata from Defendant.

18.     At all times during its discussions with Plaintiffs, Tysinger represented that the vehicle was "new," and did not disclose any adverse history of the vehicle.

19.     The Buyers Order that eventually became part of the purchase transaction likewise verified, in writing, that Tysinger was representing the vehicle as being sold as "new."

20.     Plaintiffs purchased a long-term service plan as part of the transaction, and paid a premium for that protection.

21.     The next day, Plaintiffs returned to the dealership to go over the "new" vehicle's features.

22.     On around October 3, 2020, Plaintiff Kelly submitted online proof of purchase of their "new" vehicle to their Bluelink account—an electronic application Hyundai uses to

communicate with consumers (among other things)—to be updated and activated as to the "new" vehicle purchase.

23.     A few days later, Plaintiff Ms. Kelly received emails from Hyundai relative to the Bluelink account and digital card. Both were activated as to the "new" vehicle.

24.     On around October 7, 2020, Plaintiff Kelly tried to login to the Bluelink account only to receive a message that the vehicle was in stolen-vehicle-recovery mode, and they could not access the Bluelink app.

25.     Around that same day, Plaintiff Kelly contacted the salesman who sold Plaintiffs the vehicle and reported to him the status of their situation. Ms. Kelly then contacted Bluelink to obtain information regarding the message appearing in the vehicle that it was in stolen-vehicle-recovery mode. Plaintiff Kelly was given a case number of 17361244 by the representative of Bluelink.

26.     On around October 7, 2020, Plaintiff Kelly contacted the York County Sheriff's department. Deputy Minor went to Plaintiff's home, inspected the vehicle, ran the tags and informed the Plaintiffs that the tags came back to an old vehicle. Deputy Minor then ran the VIN, and no information was received.

27.     The following day, Plaintiff Kelly drove the vehicle to the dealership and spoke with the new car sales manager Chris Hicks. Plaintiff Kelly asked Mr. Hicks if her car had ever been stolen. Mr. Hicks replied, "there were some cars stolen a few months ago but none were from Hyundai."

28.     This representation was false, as Defendant is aware that the vehicle as stolen from its dealer lot, recovered by the Hampton Police Department, and returned to Defendant after that incident.

29.     On around October 8, 2020, Mr. Hicks contacted Hyundai Bluelink and the Hampton Police Department to have an officer come to the dealership and contact Bluelink to have the stolen vehicle recovery mode removed from Plaintiffs' Bluelink account. Detective Sandie Youngs with the Hampton Police Department appeared and later informed Plaintiff Kelly that in fact the vehicle had been stolen in August of 2020 and recovered in Norfolk, Virginia.

30.     Learning this information, Plaintiff Kelly left the vehicle at the dealership.

31.     On or about October 9, 2020, Plaintiff Kelly received a call from Defendant's representative Henry Bly indicating that the management team was working to resolve the issues with the vehicle.

32.     Around that same date, Plaintiff Kelly contacted Detective Youngs and was given the date the vehicle was stolen, when it was recovered, and that it was towed back to the dealership, with the incident given report number of 20-0806005.

33.     On or about October 10, 2020, Plaintiffs returned to the dealership to meet with Larry Stevenson. Mr. Stevenson proceeded to give the Plaintiffs two options: (1) cancel the contract, recover the monies paid and receive their trade-in vehicle back; (2) find another Hyundai and hopefully get it for the same price. Plaintiffs left the dealership to discuss these options and informed Mr. Stevenson they would return the following Monday.

34.     On around October 12, 2020, Plaintiffs returned to the dealership to pick up the Sonata they purchased. Plaintiffs were informed by Henry Bly that the vehicle was locked-up because the stolen-vehicle-recovery mode was still active.

35.     Mr. Bly informed the Plaintiffs that he would make sure the vehicle would be delivered to Plaintiffs the following day and that management would be working to remove the stolen-vehicle-recovery mode.

36.     A day or so later, the vehicle was delivered and both traditional keys worked. The digital key, however, did not. Plaintiff Kelly notified Henry Bly and was told it may take a few days to get that working.

37.     Plaintiff Kelly checked the Bluelink app periodically to see if the stolen mode had been removed and each time it had not. Plaintiff Kelly was, reasonably, afraid to drive the vehicle for fear of being pulled over as the vehicle was still in stolen-vehicle-recovery mode.

38.     On or about October 24, 2020, Plaintiff Kelly had to leave home and with no other vehicle available, she decided to drive the Sonata. She was unable to do so, however, as the vehicle was completely shut down.

39.     Plaintiff Kelly contacted Henry Bly to inform him the vehicle was not working, again. Tysinger dispatched a tow truck to Plaintiffs' residence to recover the vehicle and take it back to the dealership.

40.     On around October 26, 2020, Chris Hicks contacted Plaintiff Kelly and asked if she needed a vehicle to drive while the dealership worked on the Hyundai Sonata.

41.     On or about November 2, 2020, Plaintiff Kelly went to the dealership to obtain personal items out of the Hyundai Sonata, at which time Matt Horton the service advisor with Tysinger Hyundai informed Ms. Kelly that the vehicle was not starting again, and also confirmed to Ms. Kelly that the Sonata had in fact been stolen.

42.     Matt Horton is the only employee at the dealership that the Plaintiffs encountered that admitted the vehicle had been stolen. Plaintiffs left the vehicle at Tysinger Hyundai where it is believed by them to still be there as of this date.

43.     Tysinger has steadfastly asserted that the vehicle was not stolen, but that is not correct. The Hampton police, Bluelink, and Tysinger's representative Matt Horton all believe otherwise.

44.     These three sources, who have no reason to deceive Plaintiffs, confirm that it is no mistake that the vehicle remains in stolen-vehicle-recovery mode.

45.     Indeed, if some electronic bugaboo were truly the cause of the problem, it would seem that Tysinger and Hyundai could solve the problem in the year and a half since Plaintiffs purchased the vehicle and identified the problem. Yet, Tysinger has been unable to correct the problem.

46.     That is because the vehicle was in fact stolen, and Tysinger now has a problem on its hands because it fraudulently sold the vehicle to Plaintiffs without revealing the vehicle's sordid history.

**CLAIMS FOR RELIEF**

**<u>COUNT I – FRAUD OR FRAUDULENT CONCEALMENT</u>**

47.     Plaintiffs reallege the previous Paragraphs as though set forth fully herein.

48.     Defendant was aware at the time that it was presenting the vehicle for sale, was negotiating the transaction with Plaintiffs, and ultimately sold the vehicle to Plaintiffs that the vehicle had been stolen.

49.     Despite knowing that the vehicle had been stolen, Defendant at all times represented to Plaintiffs that the vehicle was "new."

50.     This representation was material, as Plaintiffs were seeking to purchase a "new" vehicle, and Defendant knew this.

51.     Alternatively, because Defendant had superior knowledge of the vehicle history, Defendant was obligated to reveal that history to Plaintiffs.

52.     Despite these obligations, Defendant represented the vehicle was new and, although it knew this representation was false when it made it, made it as a positive assertion or failed to correct the misrepresentation to Plaintiffs.

53.     Plaintiffs reasonably relied on Defendant's misrepresentation that the vehicle was new.

54.     All of the deal paperwork indicated that the vehicle was new, and Plaintiffs' purchase included a "new" vehicle warranty and extended warranty plan based on the vehicle being new.

55.     Plaintiffs purchased the vehicle believing the representation that the vehicle was new. Had Plaintiffs known the truth, they would have refused to purchase the vehicle or would have paid much less for it.

56.     Plaintiffs purchased a vehicle that has diminished in value significantly, as they expect to experience significant difficulty in selling or trading this stolen vehicle for anything near the value of a vehicle that had not been stolen.

57.     Plaintiffs have therefore suffered damages in at least paying more for a vehicle than they would have had they known it had been stolen at the time of the transaction.

58.     Plaintiffs are therefore entitled to recover their actual damages for Defendant's fraud or fraudulent concealment of the vehicle's history.

59.     Plaintiffs are also entitled to recover attorneys' fees pursuant to *Prospect Development Co. v. Bershader*, 258 Va. 75, 92 (1999), and its progeny.

## COUNT II – MAGNUSON MOSS WARRANTY ACT

60.     Plaintiffs reallege the previous Paragraphs as though set forth fully herein.

61.     The Sonata at issue in this case is a "consumer product" under 15 U.S.C. § 2301(1). Plaintiffs are "consumers" under 15 U.S.C. § 2301(3).

62.     Defendant is both a "supplier" and "warrantor" under 15 U.S.C. § 2301(4) and (5).

63.     The documentation relating to Plaintiffs' purchase of the Sonata are "written warranties" that the vehicle is "new" for purposes of 15 U.S.C. § 2301(6).

64.     At all times well known to Defendant, it represented to Plaintiffs by express warranties that the Sonata was new.

65.     In truth and in fact, Defendant's representations and warranties were false.

66.     By asserting that the vehicle was new in its marketing materials, discussions with Plaintiffs, and deal paperwork, Defendant caused such statements to be an express warranty that the Sonata possessed such qualities.

67.     Such qualities therefore became part of the basis of the bargain between Plaintiffs and Defendant. Plaintiffs relied on such representations in making their purchase decision.

68.     Defendant breached the express warranty that the Sonata was new when it sold the non-new, stolen vehicle to Plaintiffs.

69.     Due to Defendant's breach of express warranties, Plaintiffs suffered actual damages, including paying for the Sonata when they would not have bought it had they known the truth or paying more than they would have had they known the truth, as well as the costs associated with continuing to maintain the vehicle while Defendant refuses to acknowledge its fraud, their stress, aggravation, anger, loss of sleep, and similar facets of actual damages.

70.     Plaintiffs are entitled to recover such actual damages from Defendant as set forth herein.

71.     Because of the hidden nature of the defect and Defendant's misrepresentations of the status of the Sonata, Plaintiffs could not have discovered the nature of their injury any sooner than they did.

72.     By completing the transaction for a new vehicle when Defendant knew that the Sonata was indeed not new, Defendant engaged in "prohibited acts" as defined in 15 U.S.C. § 2310(b).

73.     Because of Defendant's violations, Plaintiffs are entitled to recover their actual damages, attorneys' fees, and costs incurred in prosecuting this action. 15 U.S.C. § 2310(d).

## COUNT III – VIRGINIA CONSUMER PROTECTION ACT

74.     Plaintiffs reallege the previous Paragraphs as though set forth fully herein.

75.     Defendant is a "supplier" as defined by Virginia Code § 59.1-198.

76.     Defendant represented the Sonata was new at the time Plaintiffs purchased the Sonata. Despite knowing that Plaintiffs sought a new vehicle and believed Defendant's representations that the Sonata was indeed new, Defendant did nothing to correct its misrepresentations.

77.     Plaintiffs relied on these representations in making their purchase decision.

78.     Plaintiffs purchased the Sonata for personal, family, or household use.

79.     Defendant knew that the Sonata had been stolen, driven by the thieves, and recovered by police before Plaintiffs first visited Defendant's dealership.

80.     Defendant represented to Plaintiffs that the Sonata was new, and a reasonable person would have believed, as Plaintiffs did, that the vehicle was indeed new.

81.     Defendant knew that representing the Sonata as "new" was both misleading and inaccurate, but sold the Sonata as supposedly new anyway.

82.     At a minimum, Defendant is in violation of Virginia Code § 59.1-200 A5, A6, A7, A8, and A14.

83.     Defendant's actions, as described above, were willful as that term is used in Virginia Code § 59.1-204.

84.     Pursuant to Virginia Code § 59.1-204, Plaintiffs are entitled to actual damages, including paying for the Sonata when they would not have bought it had they known the truth or paying more than they would have had they known the truth, as well as the costs associated with continuing to maintain the vehicle while Defendant refuses to acknowledge its fraud, their stress, aggravation, anger, loss of sleep, and similar facets of actual damages.

85.     If the jury determines that Defendant's conduct was willful, it may increase damages to an amount not greater than three times that of the actual damages sustained.

86.     In addition, Plaintiffs are entitled to reasonable attorneys' fees and court costs pursuant to Virginia Code § 59.1-204.

**WHEREFORE**, Plaintiffs pray for judgment against Defendant for their actual damages; their attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate from October 2, 2020; for treble damages for Defendant's willfulness; and such other relief, including equitable relief, the Court deems just and proper.

**Plaintiffs demand a trial by jury.**

DAMITA NATASHA KELLY and
ROBERTINO LEE SCENIE,

By:   _/s/ Leonard A. Bennett_
Of Counsel

Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89746
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
lenbennett@clalegal.com
craig@clalegal.com

*Counsel for Plaintiffs*